The case was presented to his Honor below upon the following (57) agreed facts:
That on 6 February, 1869, H. B. Knox commenced a civil action in the Superior Court of Hertford County, North Carolina, against Lawrence Askew, Mills Sumner and George H. Mitchell. The summons was served 11 February, 1869, on the defendants. At October Term, 1869, of said court, the plaintiff recovered judgment in said action against the defendants, Lawrence Askew and George H. Mitchell, for $1,954.24 and for $18.35 cost, with interest on $1,654.50 from 18 October, 1869, until paid.
That said judgment was recovered on a bond executed 11 October, 1866, by Lawrence Askew, Mills Sumner and George H. Mitchell, payable to the order of John W. Harrell, administrator of William Montgomery, for $1,654.50, payable six months after date, with interest from date.
That execution was issued on said judgment to the sheriff of Hertford County, who, on 3 January, 1870, sold thereunder the "Powell tract," at the courthouse door, as required by law, as the property of Lawrence Askew, and John A. Vann became the purchaser and received a deed from said sheriff therefor, dated 5 April, 1870. The locus in quo is embraced in the boundaries of said Powell tract.
That on 1 November, 1871, said John A. Vann conveyed the (58) said Powell tract to the plaintiffs, heirs at law of Julia A. Newsome, who were grandchildren of said Lawrence Askew and also his heirs.
That said Lawrence Askew died about the year 1884, domiciled in Hertford County, leaving a last will and testament, which was duly admitted to probate in said county, in which he appointed J. B. Slaughter and Blount Willoughby his executors, and who were duly qualified as such. *Page 56 
That the will of said Lawrence Askew contains the following item: "I leave all my land not otherwise disposed of to be sold, the Brantley and Reynolds land both containing about 100 acres, the Rasbery land, 50 acres, adjoining W. H. Godwin, and all other lands not otherwise mentioned; the piece of land on which the ginhouse stands contains 100 yards square; and the money arising from said sale shall be assets in the hands of my executors."
That the Powell tract is not mentioned by name or description in said will. That on 12 October, 1885, said executors, under the above item in the will of said Askew, sold the right, title and interest of said Lawrence Askew in the Powell tract, and S. S. Harrell became the purchaser and received a deed from said executors for said right, title and interest in the said Powell tract. See Exhibit "A."
That on 23 December, 1890, said S. S. Harrell executed to Benjamin Beverly a deed or paper-writing, a copy of which is hereto annexed, marked Exhibit "B," as a part of these facts; said Beverly, after getting said paper-writing or deed from S. S. Harrell, settled upon and occupied the western portion of the Powell tract of land, which includes within its boundaries the locus in quo.
That said Benjamin Beverly died intestate on . . March, 1902, leaving the defendants as his widow and heirs at law.
That either side may use as a part of these facts any deed or paper-writing in their respective chain of title.
This action was begun on 17 December, 1908. The plaintiff Bettie J. Newsome married J. S. Bond, 12 July, 1882, and has since her said marriage been under coverture; Levinia R. married, first, Hosea Baker, 29 September, 1886; Baker died in 1897, and she married W. R. Hughes 7 July, 1899.
On 22 December, 1890, said S. S. Harrell executed the deed hereto attached, marked Exhibit "C," to Whitmel Young, who, after getting said deed, settled upon and occupied the eastern portion of said Powell tract of land; and that after 22 December, 1890, said Beverly and said Young divided the Powell tract between themselves and continued to live on and occupy said Powell tract of land, up to known (59) and visible lines and boundaries up to the beginning of this action. See Exhibit "D."
The Powell tract of land described in the complaint and the deeds aforesaid is the same tract of land.
The Exhibit "A" referred to in the agreed facts is the deed from the executors of Lawrence Askew to S. S. Harrell and his heirs, dated 7 June, 1886, conveying one certain tract or parcel of land lying and being in Hertford County aforesaid, and known and described as follows: "The tract of land known as the Powell or Stallings tract *Page 57 
of land, owned by Lawrence Askew, and bounded on the north by White Oak Swamp, on the east by other lands of said Askew, on the west by the lands of W. H. Godwin, J. B. Chamblee, Jr., and Thomas Eiley; on the south by the Slaughter lands, containing 131 acres, be the same more or less." Exhibit "B" is the deed from S. S. Harrell to Benjamin Beverly, ancestor of defendants, dated 22 December, 1890, and contains the following granting clause: "has granted, bargained and sold, and by these presents do grant, bargain and sell and convey to said Benjamin Beverly, his heirs and assigns forever, his interest in about one-half of a piece of land, as per survey of recent date, known, etc.," describing it as the Powell land and referring to the deed to him by the executors of Lawrence Askew. The deed to Whitmel Young referred to is made by S. S. Harrell on 22 December, 1890, same day as the deed to Beverly, and contains a granting clause and description in the same language.
The defendant denied that the plaintiffs were the owners of the land in controversy, and pleaded the seven-year statute of limitations and adverse possession thereunder. The agreement between Beverly and Young, establishing the dividing line between them, was in writing duly signed and dated 30 March, 1901. The possession of Beverly and his heirs of the western half to the agreed dividing line has been adverse, open, notorious and exclusive since then; in like manner has been the possession of Young of the eastern half. Upon the agreed facts, his Honor rendered judgment that plaintiffs were the owners of and entitled to the possession of the land, and adjudged the costs against the defendants, and ordered the writ of possession to issue. The defendants appealed.
The title in fee to the land in controversy was undoubtedly, at one time, vested in Lawrence Askew; it was divested by a deed of the Sheriff of Hertford County to John A. Vann, on 5 April, 1870, this deed being made pursuant to a sale by (60) the sheriff under an execution issued on a judgment against Askew. On 1 November, 1871, John A Vann conveyed the lands to the plaintiffs; thus they became the owners of it in fee simple; and, as the legal title draws to it the possession, the plaintiffs, nothing else appearing, would be entitled to recover the land from the defendants.
The defendants, however, to avoid a recovery by the plaintiffs, show: 1. The death of Lawrence Askew in 1884, his will appointing Slaughter and Willoughby executors, directing them to sell certain named tracts of land and all other lands not otherwise mentioned. *Page 58 
2. A public sale by the executors of the land in controversy to S. S. Harrell, and a deed to him by the executors therefor, dated 7 June, 1886.
3. A deed from Harrell to Benjamin Beverly, dated 22 December, 1890, purporting to convey to him and his heirs "his interest in about one-half of a piece of land, etc." (describing the land in controversy).
4. The adverse and uninterrupted possession of Beverly from that date, to wit, 22 December, 1890.
5. A similar deed to Whitmel Young of the same date an in the same words.
6. The written agreement between Beverly and Young, establishing the dividing line between them, dated 30 March, 1901.
It will, therefore, be seen that the defense is rested upon two grounds: First, that the deed from Harrell to Beverly is, itself, color of title, and the adverse and uninterrupted possession of Beverly, for seven years before this action was begun, under it matured the colorable title into a good title. The plaintiffs reply that this deed of Harrell to Beverly is void for the vagueness and uncertainty of the description and is not good as color of title. Second, that if the Harrell deed to Beverly is void, then the deed from the executors, Slaughter and Willoughby, to Harrell is color of title, and Beverly having been put into possession of the land by Harrell, without a valid delimitation of the land possessed by him, the possession of Beverly extended to the outer limits of the land described in the deed of the executors to Harrell, which is the locus in quo; and Beverly's possession for more than seven years before this action was begun, being adverse to all persons except his lessor, Harrell, and being uninterrupted, ripened the colorable title of Harrell into a good title against the plaintiffs. The plaintiffs reply that nothing short of twenty years' adverse possession would defeat their title, and that the deed to Harrell, being (61) made by the executors of Askew, who had no title, was not color of title.
The result will be the same to the plaintiffs, if either defense is sustained, for in either event they cannot recover.
Passing for the moment the matter offered as the first ground of defense, we will consider the second defense. While it is true, Lawrence Askew had no title to the land in controversy at the time of his death, for the reason it had been divested in the manner hereinbefore stated, yet his executors undertook to sell it as his property, and did convey it to Harrell by a deed fully sufficient in form to pass the title in fee. In section 780, Sedg. and Wait on the Trial of Title to Land, many instances are enumerated of deeds held to be color of title, including the following: a deed made by an administrator with the will *Page 59 
annexed, though no power of sale was given by the will, and no sale had been ordered by the court, a deed of a grantor, purporting to convey as an administrator, under a special act of the Legislature, which act was unconstitutional and void; a paper-writing purporting to be a will, proved before the proper tribunal by the oath of one witness only. These instances are approved by the decisions of this Court. McConnell v. McConnell,64 N.C. 342; Taylor v. Smith, 121 N.C. 76; Britton v. Ruffin, 122 N.C. 113;Smith v. Allen, 112 N.C. 223; Mfg. Co. v. Brooks, 106 N.C. 107; McFarlandv. Cornwell, 151 N.C. 428; Ellington v. Ellington, 103 N.C. 54, where other instances are given, form the decisions of this Court.
We see nothing to prevent the deed executed by the executors from being color of title. An analysis of the definition of the color of title byHenderson, J., in Tate v. Southard, 10 N.C. 119, will make this clear. Said that learned judge: "Color of title may be defined to be a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it or the defective mode of conveyance which is used; and it would seem that it must be so obviously defective that no man of ordinary capacity could be misled by it." This definition is approved in other decisions, and is in substantial agreement with JudgeGaston's definition in Dobson v. Murphy, 18 N.C. 586, and with Judge Hoke's
in Smith v. Proctor, 139 N.C. 314. If there was a want of title in the executors, still their deed, being fully sufficient in form to pass the fee, and conveying it, would be color of title. The very term imports that the true title is not passed; if it were, the doctrine of color of title would not be applicable.
Under the facts agreed it does not appear that either the plaintiffs or Harrell, or any other person claiming under either of them, were in the actual possession of the locus in quo from 1886 to 1890; therefore the legal possession continued in the plaintiffs as the (62) holders of the superior title, and so continued until actual entry by any adverse claimant. This adverse entry occurred on 22 December, 1890, when Harrell put Beverly, the ancestor of the defendants, and one Young, into the possession of the land and they took possession of it. Since then this possession has been under a claim of title adverse, continuous, and there being no delimitation of their possession, then to the outer boundaries of the land described in the deed to Harrell, which embraces the entire locus in quo. Ruffin v. Overby, 105 N.C. 85, and cases cited in annotated edition.
But the plaintiffs contend that Beverly and Young entered under a paper-writing purporting to be deeds, but which are void as deeds *Page 60 
because of the vague and uncertain description, and they cannot tack their adverse possession to Harrell's colorable title and mature it into a good title. Passing for the moment the alleged want of description in the instruments executed by Harrell to Beverly and Young, as not material to the ground of defense now under consideration, we think, under the decisions of this Court and the doctrine stated by text-books of recognized authority, the defendants can rely, to perfect their title, upon the colorable title in Harrell, their lessor, their entry and claim of title under his deed, and their adverse and continuous possession for the statutory time, and thereby ripen their imperfect title into a good title.
In Brown v. Brown, 106 N.C. 451, this Court said: "A vendee in possession under a contract of purchase is in privity with his vendor, and is entitled to have the time when he held possession under his vendor added to that after receiving his deed, in determining whether colorable title was matured into a perfect title by possession. The possession of the plaintiff under contract for title was, up to the time of the execution of the contract and taking of the deed, the possession of their vendors, and inured to the benefit of the vendees just as if they were tenants of theparticular tract contracted to be sold; and after the deed to them, the possession under color continued." Neal v. Nelson, 117 N.C. 393. It is likewise held in Love v. Edmonston, 23 N.C. 152; Allen v. Taylor,96 N.C. 37; Jones v. Boyd, 80 N.C. 258, and in other cases decided by this Court, that one let into possession of land under a contract of sale is a tenant at will of the vendor, and that the principle that a lessee cannot dispute the title of his lessor extends to him. In 24 Cyc., 1040, citingBay St. Louis v. Hancock County, 80 Miss. 364, it is stated that one holding under a void sale is a tenant at will of his vendor.
In McNeeley v. Langan, 22 Ohio St. 32, the Supreme Court (63) says: "The mode adopted for the transfer of the possession may give rise to questions between the parties to the transfer; but, as respects the right of third persons against whom the possession is adversely held, it seems to us immaterial if successive transfers of possession were in fact made, whether such transfers were effected by will, deed, or by mere agreement, either written or verbal."
The attempted conveyances by Harrell to Beverly and Young, though we may treat them as void, as deeds, in determining the question we are now considering, clearly establish the privity between them and Harrell, and their possession, or even, perhaps, the possession of either of them, being adverse as to the plaintiffs and all others except their lessor, continuous and notorious, for seven years before action begun, inured to the benefit of Harrell's title and matured this colorable title into a good title. *Page 61 
To repel the effect of the adverse possession, the plaintiffs say, and it is so stated in the facts agreed: "The plaintiff Bettie J. Newsome married J. S. Bond, 12 July, 1883, and has since her marriage been under coverture; Levinia R. married, first, Hosea Baker, 29 September, 1886; Baker died in 1897, and she married W. R. Hughes, 7 July, 1899." This action was begun 7 December, 1908. The act of 1899, ch. 78, secs. 2 and 3 (now sec. 363, Rev. 1905), declares: "In any action in which the defense of adverse possession is relied upon, the time computed as constituting such adverse possession shall not include any possession had against a femecovert during coverture, prior to 13 February, 1899." It is clear that this act repealed the disability of coverture since 13 February, 1899, and it has so been decided by this Court. Norcum v. Savage, 140 N.C. 472. So that the coverture of the feme plaintiff was no bar to the running of the seven years' statute, and their right of entry and title were defeated before this action was commenced. It would seem to be clear that Harrell, after his deed was registered, and up to 22 December, 1890, was subject to be sued by the plaintiffs to have his deed canceled as a cloud upon their title; and after 22 December, 1890, when he took actual possession by his tenants, Beverly and Young, to an action of ejectment.
On the first ground of defense, to wit, that the paper-writing from Harrell to Beverly is itself color of title, we have serious doubts, and are inclined to agree with the plaintiffs, that the decription [description] is too vague and uncertain.Cathey v. Lumber Co., 151 N.C. 592, and cases therein cited. But we do not think it necessary to determine this question, in view of our conclusion upon the second ground of (64) defense.
After carefully considering the record and the brief of the learned counsel of the plaintiffs, in our opinion the defendants were entitled to judgment upon the agreed facts, and the judgment entered by his Honor for the plaintiffs is erroneous, and is
Reversed.
Cited: Barett v. Brewer., 153 N.C. 552, 554; Graves v. Howard,159 N.C. 598; Riley v. Carter, 165 N.C. 336; Vanderbilt v. Chapman,172 N.C. 814. *Page 62